UNITED STATES DISTRICT COURT



DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 11-30113-RAL |
| Plaintiff, | * | |
| -vs- | * | REPORT AND RECOMMENDATION |
| | * | CONCERNING MOTION TO |
| PATRICK BROWN THUNDER, | * | SUPPRESS PHYSICAL EVIDENCE |
| Defendant. | * | |

## SUMMARY

Thirteen-year-old H.C. was sexually assaulted on the Cheyenne River Indian Reservation approximately four and-a-half years ago. Patrick Brown Thunder was the suspected culprit. Law enforcement authorities believed that the assault occurred in Brown Thunder's vehicle. They obtained a warrant to search the vehicle and seized items from it. Following his indictment on sexual abuse and kidnaping charges, Brown Thunder moved to suppress all physical evidence derived from the search on Fourth Amendment grounds. Because federal law does not require the exclusion of this evidence, the Court recommends that the suppression motion be denied.

## FACTUAL BACKGROUND

Sometime during the night of March 28, 2008, H.C. was sexually assaulted near Dupree, South Dakota. She had been drinking earlier in the night with Brown Thunder

and was intoxicated when she left with him in his car. At some point, later on, she woke up in a field with blood on her shirt and pants and walked to a nearby house and got help.

After coming home and discovering that her daughter was missing, Fawn High Bear inquired, and was told, that H.C. was with Brown Thunder in his vehicle. High Bear started looking for H.C. and before too long found Brown Thunder's vehicle parked in front of his mother's home in Dupree. High Bear walked up to the vehicle and saw H.C. – recognizing her dark blue South Pole sweater with gold letters and the shape of her body – reclined in the front passenger seat of it. High Bear yelled at Brown Thunder to let H.C. out of the vehicle and tried, unsuccessfully, to open the locked passenger side door. Brown Thunder retorted that H.C. was not in the vehicle, started to back up and then drove forward some distance to get away from High Bear.

High Bear and H.C. were ultimately reunited that night. Upon meeting, High Bear noticed that H.C. had blood all around her waist and on her back, that she was still wearing the same South Pole sweater and that she was intoxicated. H.C. was subsequently taken by ambulance to Indian Health Services in Eagle Butte and thereafter transported to a Pierre hospital for additional services.

At the hospital, a doctor examined H.C. in conjunction with the collection of a sexual assault kit. The doctor noted that she had a 2-centimeter laceration, that required stitches, on her right vaginal wall and opined that this injury could have only come from being penetrated with some kind of object. Her blood alcohol level at the time of the examination (which occurred at 10:00 a.m. the next morning) was .06.

On July 30, 2008, certain evidentiary items, including the panties and pants H.C. wore on March 28 and fingernail scrapings taken from her, were sent to the FBI laboratory for examination. In late October, 2008, the laboratory reported that textile fibers of various types and colors were found in and on the fingernail scrapings, panties and pants.

On February 26, 2009, FBI Agent Michele Lakey contacted the laboratory and spoke to Mike Rousseve, a forensic examiner there, about her investigation and asked if he thought it would be possible to find DNA evidence in the Brown Thunder vehicle given the amount of time that had elapsed. Rousseve informed Lakey that he had identified biological evidence, in the form of blood and DNA, in cases where more than one year had passed from the time the evidence was transferred to an object and the time it was collected and tested.

That same day (February 26), Lakey made application for a warrant to search Brown Thunder's vehicle. Before doing so, she confirmed that Brown Thunder was one of the registered owners of the vehicle and that the vehicle was parked at his sister's residence in Eagle Butte. A federal magistrate judge found probable cause to search the vehicle and issued a warrant.

## DISCUSSION

### I. Probable Cause

Brown Thunder claims that probable cause for the issuance of the search warrant was lacking because:

3

1.   The request to search his car was based on a hope, hunch or mere possibility that evidence of a crime would turn up and amounted to nothing more than a speculative fishing expedition;

2.   There was an insufficient nexus between the alleged sexual assault and kidnaping and the vehicle;

3.   The information in the supporting affidavit was stale; and

4.   The affidavit contained material omissions and falsehoods.[1]

He also claims that the warrant was overbroad and failed to particularly describe the items to be seized.[2] Each of these claims will be addressed in seriatim.

## A.   Fair Probability that a Search of the Vehicle would Result in the Discovery of Criminal Evidence

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause.[3] "Probable cause" is a "fair probability that contraband or evidence of a crime will be found in a particular place."[4] In determining whether probable cause exists, a court must look at the totality of the circumstances.[5] This determination is to be "based upon a common-sense reading of the entire affidavit"[6] and any "reasonable inferences"

---

[1]*See* Dkt. No. 57 at pp. 6-10, 13-14.

[2]*See id.* at pp. 10-13.

[3]*See United States v. Williams,* 477 F.3d 554, 557 (8th Cir. 2007).

[4]*Illinois v. Gates,* 462 U.S. 213, 238 (1983).

[5]*See Gates,* 462 U.S. at 230, 234.

[6]*United States v. Seidel,* 677 F.3d 334, 338 (8th Cir. 2012) *(quoting United States v. Sumpter,* 669 F.2d 1215, 1218 (8th Cir. 1982)).

drawn therefrom.[7] The assessment of probable cause is made "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the [ ] case."[8] And as the name itself suggests, "probable cause is a practical, factual, and nontechnical concept, [that] deal[s] with probabilities" and should be applied with this in mind.[9]

Once probable cause is found to issue a warrant, that finding is to be given great deference by a reviewing court.[10] The court's duty is simply to ensure that the issuing judge had a "substantial basis for . . . conclud[ing] that [the] search would uncover evidence of wrongdoing."[11] "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases. . . should be largely determined by the preference to be accorded to warrants."[12]

Lakey's affidavit, when examined in its totality and tested in a common sense way, provided sufficient probable cause for a warrant to search Brown Thunder's vehicle. The affidavit established a fair probability that blood, DNA and textile evidence – all evidence

---

[7]*United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008).

[8]*Seidel*, 677 F.3d at 337 (*citing United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir.), *cert. denied*, 534 U.S. 896 (2001))

[9]*Seidel*, 677 F.3d at 337-38.

[10]*See Gates*, 462 U.S. at 236.

[11]*Id*. (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).

[12]*United States v. Ventresca*, 380 U.S. 102, 109 (1965) (citation omitted).

5

relevant to the crimes of H.C.'s alleged sexual assault and kidnaping – would be in the vehicle.

Lakey alleged that H.C. was injured by a penetration of her vaginal wall that was forceful enough to cause the child to bleed. Lakey was also able to show that H.C. was last seen, intoxicated, with Brown Thunder in his car and that he would not let High Bear (H.C.'s mother) get H.C. out of the car. What's more, Lakey checked with a FBI forensic examiner regarding the suitability of the evidence she sought and confirmed both Brown Thunder's ownership interest in the vehicle and the location of it. This evidence, together with the inferences that could reasonably be drawn from it, was copious enough to demonstrate a fair probability that Brown Thunder sexually assaulted and kidnaped H.C. and that he used his car to do so.

Significantly, no evidence was offered – and none existed at the time – to suggest that anyone other than Brown Thunder may have committed the alleged assault. Further, whether H.C. consented to sexual intercourse with him or not was irrelevant. At the time, she was incapable of consenting because of her age (13 years old) and condition (passed out – by virtue of intoxication). Consent simply would not have been a defense to the assault offense.

A fair reading of the affidavit supports the finding of probable cause made and the issuance of a search warrant for Brown Thunder's vehicle.

## B. Nexus Between Criminal Conduct Alleged and the Vehicle

Generally there must be a sufficient nexus between the criminal activity, the things to be seized and the place to be searched.[13]  Brown Thunder contends that the nexus between the alleged sexual assault and kidnaping offenses and his vehicle was nonexistent. He boldly declares that there was nothing in Lakey's affidavit to indicate that these crimes were committed in, or by use of, his car.

Much of what has already been discussed in the preceding section (with respect to probable cause as a whole) applies with equal force to Brown Thunder's nexus contention. It will suffice to say that there was plenty of evidence presented in the search warrant affidavit to find a reasonable probability that a sexual assault and kidnaping had been committed in Brown Thunder's car. The doctor's report concerning H.C.'s injuries and the cause of them, witnesses' statements who saw the two of them together at separate times that night, the blood that was observed on H.C. later the same night and her intoxicated state, and Brown Thunder's alibi defense and evasive actions when confronted by High Bear, cumulatively provided the necessary linkage between Brown Thunder and his vehicle and H.C.'s alleged sexual assault and kidnaping.  Lakey offered sufficient evidence of a nexus between the crimes being investigated and the place to be searched for the issuing

---

[13]*See* 2 Wayne R. LaFave, *Search and Seizure,* §3.7(d) (4th ed. 2004 & 2010-11 Supp.)

judge to find probable cause for a warrant.[14] Brown Thunder's contention otherwise is unavailing.

## C. Staleness of Information and Evidence

Brown Thunder next argues that the search warrant issued was based on information that was too old to support a finding of probable cause. His "staleness" argument is premised on the 11-month gap in time between the March 28 incident – and evidence believed to be in existence from it – and the seeking of the warrant. He posits that any chance the evidence sought might still be in his vehicle and be identifiable is nothing more than conjecture and thus fails to satisfy the probable cause standard.

In the abstract, searching for evidence in a car, nearly a year after-the-fact, and hoping that the evidence remains intact, is asking a lot. But not in a case like this one where blood, DNA and textile fiber evidence was being sought.

It is axiomatic that under the Fourth Amendment the probable cause necessary to validate a search warrant must exist when the warrant is issued, not at some earlier time. This concept was recognized 80 years ago by the Supreme Court.[15]

It also goes without saying, that a delay in seeking or obtaining a search warrant may invalidate the warrant. While the lapse of time involved is an important

---

[14]*See United States v. Houston*, 665 F.3d 991, 995 (8th Cir.), *cert. denied*, 132 S.Ct. 2418 (2012); *United States v. Keele*, 589 F.3d 940, 943-44 (8th Cir. 2009); *United States v. Alexander*, 574 F.3d 484, 489-90 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3273 (2010); *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007), *cert. denied*, 552 U.S. 1104 (2008); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002).

[15]*See Sgro v. United States*, 287 U.S. 206, 210-11 (1932).

consideration, it is by no means controlling.[16] There is no bright-line test for determining

when information is stale or a quantifiable standard for assessing the vitality of probable

cause.[17] Instead, time factors must be examined in the context of the specific case including

the character of the crime, the alleged criminal involved, the things to be seized and the

place to be searched.[18] For example, the observation of a partially smoked marijuana

cigarette in an ashtray may very well be stale the day after the cleaning lady has been in,

but that of body parts buried in a cellar may not, even decades later. Staleness, therefore,

is a function of the circumstances present, and not some hard and fast rule that involves

counting the number of days between the occurrence of the facts supplied and the

preparation and submission of the warrant affidavit.[19]

When the crime under investigation is a sex or short duration kidnaping offense (i.e.

not a continuing one), and the desire is to search for the fruits, instrumentalities or evidence

of that offense, the factor likely to emerge, over all others, as the most important one in the

staleness calculus is the nature of the property item (or thing) being sought.[20] Is the item

---

[16]*See United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975).

[17]*See United States v. Perry*, 531 F.3d 662, 666 (8th Cir. 2008); *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008); *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001).

[18]*See Perry*, 531 F.3d at 662; *Summage*, 481 F.3d at 1078; *Steeves*, 525 F.2d at 38; *Andresen v. State*, 24 Md. App. 128, 172, 331 A.2d 78, 106 (1975), *aff'd sub nom.*, 427 U.S. 463 (1976); *see generally* 2 LaFave, *Search and Seizure*, §3.7(a).

[19]*See United States v. Darr*, 661 F.3d 375, 378 (8th Cir. 2011).

[20]*See* 2 LaFave, *Search and Seizure*, §3.7(a) at p. 383.

9

perishable, easily transferable or of enduring utility to the suspect in possession of it? And is the item portable, consumable, long lasting or one in which the criminality is known to the suspect and therefore likely to be quickly disposed of?[21]

Here, Lakey sought to search Brown Thunder's vehicle for biological evidence and textile fibers. Concerned about whether blood and DNA would still be present in the vehicle and capable of being analyzed, she contacted the FBI's forensic laboratory and asked Rousseve, an examiner there, if he thought it would be possible to find DNA evidence in the vehicle after almost a year had gone by. When Rousseve told Lakey that it was possible and that he had worked older cases than this one where examiners were still able to test the DNA collected, she promptly prepared a search warrant affidavit. In her affidavit, she summarized her communication with Rousseve and what he had told her about the blood and DNA evidence being identifiable a year after-the-fact.

Based on Lakey's averments, and in particular those relating to her conversation with Rousseve, it was reasonable for the issuing judge to find probable cause to believe that biological evidence, in the form of blood and DNA, would be in Brown Thunder's car – even after 11 months had passed. Given the source and credibility of the evidence in support of the warrant request, in light of the DNA identification techniques available at the time, there was a fair probability that a search of the car would lead to the discovery of evidence.[22]

---

[21]*See id.* at pp. 384-86.

[22]*See United States v. Humphrey,* 140 F.3d 762, 764 (8th Cir. 1998).

The primary determinants of whether DNA testing can be done on a particular sample are (1) the quantity of the DNA present in the sample and (2) the extent to which it is degraded.[23] Generally speaking, if a sufficient quantity of DNA can be extracted from a crime scene, no matter what the nature of the sample, DNA testing can be done without a problem.[24]

Procedures for testing trace or contact DNA, left on the surface of an object such as the steering wheel of a car, have likewise been shown to work.[25] But whether a particular sample contains enough DNA to allow testing cannot always be predicted accurately. "The best strategy is to try."[26]

An important aspect of DNA quality is the extent to which the long DNA molecules are intact.[27] "In dry biological samples, protected from air, and not exposed to temperature extremes, DNA degrades very slowly."[28] Certain DNA testing has proved effective with old and badly degraded materials such as the remains of the Tsar Nicholas family (buried in 1918 and recovered in 1991).[29]

---

[23]*See Reference Manual on Scientific Evidence*, §III.A. at p. 151 (3d ed. 2011).

[24]*See id.*, §III.A.1. at p. 151.

[25]*See id.*

[26]*Id.* at p. 152.

[27]*See id.*, §III.A.2 at p. 152.

[28]*Id.*

[29]*See* Peter Gill, et al. *Identification of the Remains of the Romanov Family by DNA Analysis*, 6 Nature Genetics 130 (1994).

DNA can be exposed to a great variety of environmental conditions without there being any effect on its capacity to be tested.[30] Studies have shown that contact with a variety of surfaces, both clean and dirty, and with gasoline, motor oils, acids and alkalis either have no effect or, at worse, render the DNA untypable.[31] Similarly, contamination with biological insults, such as bacteria, fungi or plant materials, may accelerate DNA degradation, but they do not generate spurius human genetic typing.[32]

There are even approaches available to cope with and decipher samples which contain a mixture of fluids or tissues from different individuals.[33] And courts have generally rejected arguments that mixture analysis is so unreliable or open to manipulation that the results are inadmissible as evidence.[34]

Unlike DNA, fiber evidence, while probative, cannot pinpoint an offender in a definitive manner. Success usually hinges on the ability to compare fibers from one source – like a sexual assault or kidnaping victim's fingernail scrapings – with those from another source – such as the interior of a car. Shape, dye, content, size, chemical composition and

---

[30]*See Reference Manual on Scientific Evidence*, §III. A. 2. at p. 153.

[31]*See id*. at p. 153 & n.44.

[32]*See id.*, §III. B. 2. at p. 158.

[33]*See id.*, §V. C. at pp. 182-85.

[34]*See id.* at p. 185, n. 147.

microscopic appearances are all analyzed to determine consistencies and match probabilities.[35]

Fibers, especially in a vehicle that is rarely cleaned, can be present – and thus have evidentiary value – for significant periods of time.[36] And fiber analysis is generally considered reliable and is used in criminal cases to prove or disprove contact between a suspect and the victim at the alleged crime scene.[37]

The biological evidence sought from Brown Thunder's vehicle – blood and DNA – is not something that (1) has a brief life or significance; (2) is noticeable to the naked eye; (3) is easily transferable; or (4) is likely to be disposed of. Similarly, the textile fiber evidence thought to be in the vehicle is just as enduring and latent as blood, although admittedly, fibers are more likely to be shifted elsewhere (when contact is made with them) or they are removed completely (by vacuuming).

Because both kinds of evidence are often hidden, submerged or difficult to detect, they are more apt to remain intact, at or near where they were originally placed, for a lengthy period of time. And because such evidence is not incriminating on its face and may

---

[35]*See* David Polin, *Proof of Identity of Fiber, Fabric, or Textile*, 61 Am.Jur. POF.3d 501 (2012); Douglas W. Deedrick, *Hairs, Fibers, Crime and Evidence, Part 2: Fiber Evidence, Forensic Science Communications*, Vol. 2, No. 3 (July 2000); http://www.fbi.gov/about-us/lab/forensic-science-communications/fsc/July 2000/deedrick 3.htm; *Forensic Fiber Examination Guidelines, Forensic Science Communications*, Vol. 1, No. 1 (April 1999), http://www.fbi.gov/about-us/lab/forensic-science-communications/fsc/April 1999/houcktoc.htm.

[36]*See id.*

[37]*See* 61 Am.Jur. POF 3d 501, §23.

not be discovered or paid attention to, the chances of it being around months, and even a year later, are much greater.

Lakey's affidavit contained the requisite "fair probability" that evidence of the type and character she sought to search for would still be in Brown Thunder's vehicle.[38] The information in the affidavit and evidence believed to be concealed in the vehicle were not stale so as to vitiate probable cause for the issuance of the warrant.[39]

## D. Supposed Omissions and False Statement in Warrant Affidavit

Brown Thunder lastly charges that Lakey omitted material facts and made a false statement in her search warrant affidavit that tainted the issuing judge's probable cause determination. He insists that because of this, he is entitled, under *Franks v. Delaware*,[40] to a hearing and ultimately to the entry of an order voiding the search warrant and suppressing all evidence seized pursuant to it. But Brown Thunder has failed to make the necessary showing, either initially or on the merits, to justify granting him any *Franks* relief whatsoever.

---

[38]*See Humphrey,* 140 F.3d at 764; *United States v. LaMorie,* 100 F.3d 547, 554-55 (8th Cir. 1996); *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir.), *cert. denied,* 516 U.S. 903 (1995).

[39]*See United States v. Gettel,* 474 F.3d 1081, 1086 (8th Cir. 2007); *United States v. Gipp,* 147 F.3d 680, 687 (8th Cir. 1998); *Humphrey,* 140 F.3d at 764; *Maxim,* 55 F.3d at 397-98; *see also Perry,* 531 F.3d at 666; *Chrobak,* 289 F.3d at 1046; *Lampkins v. State,* 465 A.2d 785, 792-93 (Del. 1983); *see generally* 2 LaFave, *Search and Seizure,* §3.7(a) at pp. 374-90.

[40]438 U.S. 154 (1978).

14

Where the probable cause determination is premised on an affidavit containing omitted or false statements, the resulting search warrant may be invalid if the defendant can establish, by a preponderance of the evidence, that (1) the affiant omitted facts or included false statements with the intent to make, or in reckless disregard of whether they were thereby made, the affidavit misleading and (2) the affidavit, if supplemented by the omitted information, or cleansed of the falsities in it, would not have been sufficient to support a finding of probable cause.[41]

To be entitled to a *Franks* hearing, a "substantial preliminary showing," that includes allegations of deliberate falsehood or of reckless disregard for the truth must be made. These allegations must be accompanied by an offer of proof.[42] They should point out specifically what information was omitted from the warrant affidavit and what portion of it is false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. Deliberate falsity or reckless disregard must be shown.[43]

There is a "presumption of validity with respect to the affidavit supporting the search warrant[.] [T]o mandate an evidentiary hearing, [the defendant's] attack must be more than

---

[41]*See United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008); *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir.), *cert. denied*, 554 U.S. 908 (2008); *Williams*, 477 F.3d at 557; *see also Reinholz*, 245 F.3d at 774.

[42]*See Franks*, 438 U.S. at 171; *United States v. Smith*, 581 F.3d 692, 695 (8th Cir. 2009).

[43]*See Franks*, 438 U.S. at 171; *Williams*, 477 F.3d at 557.

conclusory and must be supported by more than a mere desire to cross-examine."[44] And "[t]he substantiality requirement [needed for such a hearing] is not lightly met."[45] Indeed, a finding by a reviewing court that the affiant "may" have intentionally or recklessly omitted information from or included false statements in the warrant affidavit is legally insufficient to necessitate a *Franks* hearing absent a determination that the omitted or included information may, in turn, have rendered the affidavit misleading or otherwise made a probable cause finding unsupportable.[46]

Contrary to Brown Thunder's claim, Lakey did disclose, in her search warrant affidavit, that H.C. had no memory of what happened.[47] Lakey stated that on March 28, H.C. remembered leaving A.C.'s house with someone, but then passed out and woke up in a field.[48] This statement plainly revealed that H.C. was unconscious and had no recollection of any of the events between the time she left the house and woke up later on in a field with blood on her clothes. H.C.'s memory gap was not omitted from the affidavit and thus did not implicate the precepts of *Franks*.

---

[44]*Franks,* 438 U.S. at 171; *Williams,* 477 F.3d at 558.

[45]*Williams,* 477 F.3d at 558 (*citing United States v. Wajda,* 810 F.2d 754, 759 (8th Cir.), *cert. denied,* 481 U.S. 1040 (1987)); *see also United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir.), *cert. denied,* 537 U.S. 962 (2002).

[46]*See Snyder,* 511 F.3d at 817; *Williams,* 477 F.3d at 558.

[47]*See* Mot. Hrg. Ex. 1 at p.2, ¶5 (July 13, 2012).

[48]*See id.*

16

The same is true of Brown Thunder's ancillary charge that Lakey's affidavit contained a false statement of material fact. Her statement that A.C. saw Brown Thunder "driving down the road with [H.C.] still in the car"[49] was not false. The logical inference of what A.C. reported was that Brown Thunder left her house with H.C. in the car with him. A.C. said that after observing Brown Thunder "going down the road" she told Toni Cochran, who was at the house at the time, that he "was not safe to be around" and then ran down the hill to look for [him] to see where he went."[50] Why would A.C. express this concern and bother to look for Brown Thunder if he was alone in the car? And why would Brown Thunder tell A.C., later that night, "not to tell the cops that [H.C.] went with him"[51] if he was riding around by himself? A.C.'s rendition of what took place on the night of the alleged sexual assault and kidnaping – described in the FBI 302 Lakey reviewed before preparing her affidavit – indicated that Brown Thunder and H.C. departed from A.C.'s house together in his car. Lakey's statement was not false or, for that matter, some baseless contrivance.

Brown Thunder has failed to make the requisite "substantial preliminary showing" for a *Franks* hearing. There were no facts that were left out or misstated, much less proof, by a preponderance of the evidence, that the alleged omissions and false statements were made knowingly, intentionally or with reckless disregard for the truth. *Franks* thus provides him with no traction or ground for relief.

---

[49]*Id.* at ¶7.

[50]Docket No. 93, Ex. D at p. 2.

[51]*Id.* at p. 3.

## II. Particularity of Items to be Seized

Ever vigilant, Brown Thunder asserts that the search warrant for his car was overbroad and violated the Fourth Amendment's particularity requirement. He complains that the warrant left it up to the unfettered discretion of the executing officers to determine, or guess, what might constitute blood, DNA or textile fiber evidence. He also complains that the warrant did not identify the objects in, or parts of, the car that officers were authorized to seize. He says that the warrant effectively permitted a general search for anything that officers believed might possibly contain blood, DNA or fiber evidence without giving them any guidance or limitation on what such evidence might look like or be, and without any specific description of what items they were allowed to seize. The Court disagrees.

The Fourth Amendment's Warrant Clause categorically prohibits the issuance of a warrant unless it "particularly describe[s] the place to be searched and the person or things to be seized."[52] The purpose of the particularity requirement is to prevent general searches. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[53] A search warrant is proper if its description

---

[52]U.S. Const., amend. IV.

[53]*Maryland v. Garrison,* 480 U.S. 79, 84 (1987); *see also Andresen v. Maryland,* 427 U.S. 463, 480 (1976); *Stanford v. Texas,* 379 U.S. 476, 481-82 (1965); *Marron v. United States,* 275 U.S. 192, 195-96 (1927).

of the evidence to be seized is "'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'"[54] The requisite degree of specificity is flexible, depending upon the circumstances.[55] Thus, a description is generally valid "if it is as specific as the circumstances and nature of the activity under investigation permit."[56] The standard to be used in making this determination is one of "practical accuracy rather than a hypertechnical one."[57] A court must "base its decision on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case."[58]

Applying these standards, the Court finds no merit to Brown Thunder's assertion that the search warrant was insufficiently particular. The warrant described both the place to be searched and the things to be seized with particularity. The search was confined to Brown Thunder's vehicle and hence limited to a specific area. The warrant's description of items to be seized – blood, DNA and textile fiber evidence – was detailed enough to guide

---

[54]*United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (*quoting United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978)).

[55]*See United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986).

[56]*Id.*

[57]*United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011), *cert. denied*, 132 S.Ct. 1713 (2012); *Summage*, 481 F.3d at 1079; *see also United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976) (*per curiam*).

[58]*Fiorito*, 640 F.3d at 346 (citation omitted); *see also Andresen*, 427 U.S. at 480 n. 10; *Summage*, 481 F.3d at 1079.

executing officers in their search. And these items were likely to provide relevant information concerning Brown Thunder's suspected involvement in criminal activity, namely, the alleged sexual assault and kidnaping of H.C.

The warrant in this case sufficiently circumscribed the authority of where officers could search and what they could seize.[59] A warrant need not state exactly where, in a vehicle, officers may search when the vehicle has been adequately described and probable cause extends to the entire vehicle.[60] Nor must the warrant precisely identify what officers

---

[59]*See United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) ("the words '[r]ecords, documents, receipts, keys or other objects showing access to, and control of, the residence' were sufficiently particular to preclude the exercise of any illegal discretion by the executing officers."), *cert. denied*, 529 U.S. 1029 (2000); *United States v. Beck*, 122 F.3d 676, 679 (8th Cir. 1997) (where search warrant obtained on basis of controlled purchase of marijuana and firearms, court rejects the defendant's argument that the warrant's authorization to search for "weapons" was too broad because it would include "any items in [the] defendant's house which could have been used as a weapon, including kitchen knives, baseball bats, golf clubs"); *United States v. Hibbard*, 963 F.2d 1100, 1102 (8th Cir. 1992) (where probable cause that defendant connected with inexplicable disappearance of woman, court concludes that warrant for any evidence related to her disappearance sufficient "considering the circumstances"); *see also State v. Clark*, 143 Wash.2d 731, 754-55, 24 P.3d 1006, 1017-18 ("trace evidence from the victim in the van" sufficient; just because such evidence may involve the search of many items, including parts of the walls and floors of the vehicle, does not make it a "general exploratory rummaging" prohibited by the Fourth Amendment), *cert. denied*, 534 U.S. 1000 (2001); *State v. Kirsch*, 139 N.H. 647, 650, 652, 662 A.2d 937, 939, 941 (1995) ("other items related to several acts of sexual acts with children" sufficient as the "'practical impossibility' of further specificity is apparent"); *State v. Benner*, 40 Ohio St.3d, 301, 306-07, 533 N.E.2d 701, 709 (1988) ("fibers and hairs and other trace evidence for comparison" particular enough).

[60]*See United States v. Caves*, 890 F.2d 87, 91-93 (8th Cir. 1989); *United States v. Martin*, 866 F.2d 972, 977-78 (8th Cir. 1989); *see also United States v. Toler*, 901 F.2d 399, 401 (4th Cir. 1990) (though the defendant's daughter said that he took sexually explicit photos of her and kept them in the case within his truck, warrant for the truck generally lawful, as the supporting affidavit also contained information that he was leaving the
(continued...)

may take from the vehicle that is believed to contain items and pieces of evidence they are authorized to seize.[61]

The search warrant in question was not overbroad. A practical, rather than a pedantic, reading of the warrant told officers to search through Brown Thunder's car and seize anything that appeared to have biological and fiber evidence, relevant to the alleged sexual assault and kidnaping, on or in it. In the final analysis, the warrant's description of the place to be searched and the items to be seized was sufficiently particularized to satisfy the prescriptions of the Fourth Amendment. Suppression of the evidence seized pursuant to the warrant, on particularity grounds, is therefore entirely inappropriate.

### III. Good Faith Exception to the Warrant Requirement

Regardless of whether the warrant comported with the mandates of the Fourth Amendment, the search of Brown Thunder's car and the seizure of the items from it must nonetheless be upheld. The basis for doing so is the "good faith" exception to the warrant requirement announced in *United States v. Leon*.[62]

---

[60](...continued)
area, and "it provided the magistrate with a sufficient basis to believe that additional photographs, a camera or other evidence associated with the production of child pornography might have been found elsewhere in the truck"); *see generally* 2 LaFave, *Search and Seizure*, §4.5(d).

[61]*See Caves*, 890 F.2d at 93; *Martin*, 866 F.2d at 977-78; *see also People v. Staton*, 924 P.2d 127, 135 (Colo. 1996) (description of "blood traces as may be contained within the clothing" in a vehicle for which the warrant was issued sufficient); *see generally* 2 LaFave, *Search and Seizure*, §4.6(a).

[62]468 U.S. 897 (1984).

In *Leon*, the Supreme Court created a good-faith exception to the Fourth Amendment exclusionary rule.[63] Under this exception, the rule is not to "be applied to exclude the use of evidence obtained by [ ] officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid."[64]

The rationale behind the exception is rather elementary. It is the issuing judge's responsibility to determine whether probable cause exists and, if so, to issue a warrant in accord with the dictates of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question or second guess the judge's probable-cause determination or the technical sufficiency of the warrant form. "[O]nce the warrant issues, there is literally nothing more the [officer] can do in seeking to comply with the law."[65] Penalizing the officer for the judge's errors, rather than the officer's, does not deter Fourth Amendment violations.[66]

---

[63]468 U.S. at 922.

[64]*United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905, 922), *cert. denied*, 522 U.S. 962 (1997)).

[65]*Leon*, 468 U.S. at 921.

[66]*See id.; see also id.* at 916 ("The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges . . . .").

The *Leon* exception does not exclude evidence when an officer's reliance on a warrant issued by a judge is objectively reasonable.[67] There are, however, four circumstances in which the exception does not apply:

1.  When the issuing judge is misled by information in an affidavit that the affiant knows is false or is made with reckless disregard for the truth;

2.  When the issuing judge wholly abandons his judicial role;

3.  When the affidavit is so lacking in indicia of probable cause that the official belief in its existence is entirely unreasonable; and

4.  When the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.[68]

None of these disqualifying conditions precedent are present here. Nothing that Lakey stated in her affidavit contained knowing, intentional or reckless falsities. Brown Thunder's claims to the contrary have no basis in fact and are not supported by the record.

There also is no evidence that the issuing judge failed to act in a neutral and detached manner or that he was a "mere rubberstamp."[69] Nor is there evidence to suggest the judge was somehow involved in the "competitive enterprise of ferreting out crime,"[70] or that he blindly approved the search warrant.

---

[67] *See id.* at 922; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984); *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012).

[68] *See Leon*, 468 U.S. at 923; *Fiorito*, 640 F.3d at 345; *Houston*, 665 F.3d at 995.

[69] *See and compare with Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27 (1979); *see also United States v. Martin*, 297 F.3d 1308, 1316-18 (11th Cir.) (discussing judicial abandonment under *Leon*), *cert. denied*, 537 U.S. 1076 (2002).

[70] *See Johnson v. United States*, 333 U.S. 10, 14 (1948).

Notably, the information given to the issuing judge was more than adequate to enable him to decide whether probable cause existed. In fact, the content of Lakey's affidavit was far richer and detailed than that provided in other cases[71] and was by no means "bare bones."

Finally, Lakey's reliance on the warrant was in good faith and objectively reasonable. She understandably believed that she had a valid warrant, or at least, court-approved authority to search for and seize biological and fiber evidence, germane to the sexual assault and kidnaping investigation of H.C., from Brown Thunder's car. Nothing would have made a reasonable agent, in Lakey's position, conclude otherwise.[72]

It is important to remember that the Constitution protects property owners, not by giving them a license to engage the police in a debate over the propriety of the warrant, but by interposing the "deliberate, impartial judgment of a judicial officer . . . between [themselves] and the police"[73] and by providing a right to suppress evidence improperly obtained in a cause of action for damages. Brown Thunder received the benefit of a judge's impartial evaluation before the search occurred. The search was supported by probable cause. Suppressing the evidence seized from Brown Thunder's car would be a remedy out

---

[71]*See e.g. Leon,* 468 U.S. at 915; *Aguilar v. Texas,* 378 U.S. 108, 109 (1964); *Giordenello v. United States,* 357 U.S. 480, 481 (1958).

[72]*See Moya,* 690 F.3d at 948-49; *Houston,* 665 F.3d at 995-96; *Darr,* 661 F.3d at 378-79; *United States v. Hudspeth,* 525 F.3d 667, 676 (8th Cir. 2008); *Gettel,* 474 F.3d at 1086; *United States v. Carpenter,* 341 F.3d 666, 671-72 (8th Cir. 2003); *United States v. Rugh,* 968 F.2d 750, 753-54 (8th Cir. 1992).

[73]*Wong Sun v. United States,* 371 U.S. 471, 481-82 (1963).

of proportion to any Fourth Amendment transgression that may have occurred and is uncalled for in this case.

## CONCLUSION

Probable cause existed for the search of Brown Thunder's vehicle and the seizure of items, believed to contain biological and fiber evidence of a sexual assault and kidnaping, from the vehicle. There was a clear nexus between the suspected offenses and the vehicle and neither the information in support of the warrant nor the evidence requested to be seized were stale. Lakey's affidavit did not contain any omissions or falsehoods that were either deliberately or recklessly made and the warrant was sufficiently particular in its descriptions. At any rate, the search and seizure were conducted based on an objectively reasonable (good-faith) belief that the warrant, a judge had found probable cause to issue, was valid. Brown Thunder, therefore, cannot succeed on his suppression motion.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Brown Thunder's Motion to Suppress Physical Evidence[74] be denied in its entirety.

---

[74]*See* Dkt. No. 56.

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge

this report before the assigned United States District Judge.[75]

Dated this 12th day of October, 2012, at Pierre, South Dakota.

BY THE COURT:

Mark a Moreno

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[75]*See* 28 U.S.C. §636(b)(1).